## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MICHIGAN – SOUTHERN DIVISION

| | | |
|---|---|---|
| Yolonda Short, | : | CIVIL ACTION |
| | : | |
| *Plaintiff,* | : | |
| | : | NO.  2:16-cv-11304-BAF-RSW |
| v. | : | Hon. Bernard A. Friedman |
| | : | |
| American Web Loan, Inc. et al., | : | |
| | : | |
| *Specially-Appearing* | : | |
| *Defendant.* | : | |

## SPECIALLY-APPEARING DEFENDANT AMERICAN WEB LOAN INC.'S
## <u>MOTION TO DISMISS</u>

Pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, Specially-Appearing Defendant American Web Loan, Inc. ("American Web Loan"), a wholly owned and operated entity of the federally recognized Otoe-Missouria Tribe ("Tribe"), respectfully moves for an order dismissing Plaintiff's Complaint, with prejudice.

This Motion is made on the grounds that (1) this Court lacks personal jurisdiction over American Web Loan; (2) Plaintiff has failed to allege a concrete injury sufficient to establish Article III standing; and (3) neither American Web Loan nor the Tribe have consented to the jurisdiction of this Court, and therefore,

1

both the Tribe and American Web Loan retain sovereign immunity from all judicial processes, including the instant action.

Accordingly, because this Court lacks jurisdiction over American Web Loan and the subject matter of this proceeding, the instant action must be dismissed. This Motion is based upon the Memorandum of Points and Authorities, the Declaration of Vice-Chairman Ted Grant, all pleadings hereto filed, and upon such other argument or evidence as may be presented in this matter.

Dated:  September 12, 2016        /s/ Karrie S. Wichtman
                                                Karrie S. Wichtman (P73817)
                                                Rosette, LLP
                                                Attorney for American Web Loan, Inc.
                                                25344 Red Arrow Hwy.
                                                Mattawan, MI 49071
                                                269.283.5005 (Office)
                                                517.913.6443 (Fax)
                                                kwichtman@rosettelaw.com

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN – SOUTHERN DIVISION**

| | | |
|---|---|---|
| Yolonda Short, | : | CIVIL ACTION |
| | : | |
| *Plaintiff,* | : | |
| | : | NO.  2:16-cv-11304-BAF-RSW |
| v. | : | Hon. Bernard A. Friedman |
| | : | |
| American Web Loan, Inc. et al., | : | |
| | : | |
| *Specially-Appearing* | : | |
| *Defendant.* | : | |

**SPECIALLY-APPEARING DEFENDANT AMERICAN WEB LOAN,
INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF
<u>MOTION TO DISMISS</u>**

## TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................... i

INDEX OF AUTHORITIES ............................................................... ii

INTRODUCTION.............................................................................1

BACKGROUND ...............................................................................1

ARGUMENT ....................................................................................4

I.      THE COURT LACKS PERSONAL JURISDICTION, AS
DEFENDANT HAS NO CONTACTS WITH THE STATE OF MICHIGAN. 5

II.     PLAINTIFF LACKS ARTICLE III STANDING.....................................9

III.    DEFENDANT, AS A WHOLLY OWNED ECONOMIC
INSTRUMENTALITY OF AN INDIAN TRIBE, RETAINS SOVEREIGN
IMMUNITY AGAINST SUIT, DEPRIVING THIS COURT OF SUBJECT
MATTER JURISDICTION.................................................................12

        A.   American Web Loan, as an arm of a federally recognized tribe, is
        immune from this suit. ..............................................................12

        B.   The FCRA does not abrogate tribal sovereign immunity................19

CONCLUSION...............................................................................24

# INDEX OF AUTHORITIES

Cases

*Allen v. Gold Country Casino*
464 F.3d 1044 (9th Cir. 2006) ....................................................................... 13, 17

*Bassett v. Mashantucket Pequot Tribe*
204 F.3d 343 (2d Cir. 2000)................................................................................. 22

*Bender v. Williamsport Area Sch. Dist.*
475 U.S. 534 (1986).............................................................................................. 9

*Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*
629 F.3d 1173 (10th Cir. 2010) ........................................................................... 14

*Bynon v. Mansfield*
2015 WL 2447159 (E.D. Pa. May 21, 2015) ....................................................... 17

*C&L Enters., Inc. v. Citizen Band Potawatomi Tribe of Okla.*
532 U.S. 411 (2001).............................................................................................. 20

*Cash Advance v. State*
242 P.3d 1099 (Colo. 2010).................................................................................. 17

*Chayoon v. Chao*
355 F.3d 141 (2d Cir. 2004).................................................................................. 22

*Colorado v. Cash Advance*
No. 05CVI143, 2012 WL 3113527 (Colo. Dist. Ct. Feb. 13, 2012)..................... 17, 18

*Cook v. AVI Casino Enters., Inc.*
548 F.3d 718 (9th Cir. 2008) ................................................................................ 13

*Daimler AG v. Bauman*
134 S. Ct. 746 (2014)............................................................................................ 6

*Dillon v. BMO Harris Bank, N.A.*
2016 WL 447502 (N.D. Okla. Feb. 4, 2016) ....................................................... 18

*Everette v. Mitchem*
146 F. Supp. 3d 720 (D. Md. 2015)....................................................... 14, 15, 16, 17

*Fla. Paraplegic Ass'n, Inc. v. Miccosukee Tribe*
166 F.3d 1126 (11th Cir. 1999) ........................................................................ 19, 22

*Freemanville Water System, Inc. v. Poarch Band of Creek Indians*
2008 WL 80644 (S.D. Ala. 2008)......................................................................... 22

*Goodyear Dunlop Tires Operations, S.A. v. Brown*
564 U.S. 915 (2011) ............................................................................................ 6, 7

*In re Greektown Holdings, LLC*
532 B.R. 680 (E.D. Mich. 2015) .......................................................................... 24

*Int'l Shoe Co. v. Washington*
326 U.S. 310 (1945) ............................................................................................... 6

*Kansas v. United States*
249 F.3d 1213 (10th Cir. 2001) ............................................................................. 1

*Keeton v. Hustler Magazine, Inc.*
465 U.S. 770 (1984) ............................................................................................... 7

*Kiowa Tribe of Okla. v. Mfg. Techs., Inc.*
523 U.S. 751 (1998) ................................................................................. 12, 13, 19

*Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Norton*
327 F. Supp. 2d 995 (W.D. Wis. 2004) ................................................................. 1

*Larimer v. Konocti Vist Casino Resort, Marina & RV Park*
814 F. Supp. 2d 952 (N.D. Cal. 2011) ................................................................ 22

*Lujan v. Defenders of Wildlife*
504 U.S. 555 (1992) ..................................................................................... 9, 10, 11

*Med. Mutual of Ohio v. deSoto*
245 F.3d 561 (6th Cir. 2001) ................................................................................. 5

*Meyers v. Oneida Tribe of Indians of Wisconsin*
No. 15-3127 (7th Cir. Sept. 8, 2016) .............................................................. 23, 24

*Miami Tribe of Okla. v. Walden*
206 F.R.D. 238 (S.D. Ill. 2001). ........................................................................... 1

*Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*
954 F.2d 1174 (6th Cir. 1992) ............................................................................... 6

*Michigan v. Bay Mills Indian Community*
134 S. Ct. 2024 (2014) .................................................................................. passim

*Montana v. Blackfeet Tribe of Indians*
471 U.S. 759 (1985) ............................................................................................. 20

*Neogen Corp. v. Neo Gen Screening, Inc.*
282 F.3d 883 (6th Cir. 2002) ........................................................................ 5

*Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe*
498 U.S. 505 (1991)..................................................................................... 12

*Parks v. Ross*
11 How. 362 (1851) .................................................................................... 12

*People v. Miami Nation Enterprises*
166 Cal. Rptr. 3d 800 (Cal. Ct. App. 2014) .......................................... 17, 18

*Puyallup Tribe v. Dep't of Game of Washington*
433 U.S. 165 (1977)..................................................................................... 12

*Santa Clara Pueblo v. Martinez*
436 U.S. 49 (1978)....................................................................................... 21

*Smith v. The Ohio State University*
2016 WL 3182675 (S.D. Ohio June 8, 2016) ............................................. 11

*Spokeo v. Robins*
136 S. Ct. 1540 (2016) ........................................................................... 10, 11

*United States v. U.S. Fidelity & Guaranty Co.*
309 U.S. 506 (1940)..................................................................................... 12

*Walden v. Fiore*
134 S. Ct. 1115 (2014) .................................................................................. 8

*White v. Hillcrest Davidson & Assocs.*
952 F. Supp. 2d 80 (D.D.C. 2013) ................................................................ 5

*Wyandotte v. Kansas City*
200 F.Supp.2d 1279 (D. Kan. 2002) ............................................................. 1

*Zellerino v. Roosen,*
118 F.3d 883 (E.D. Mich. 2015) .......................................................... 5, 7, 8

*Zych v. Wrecked and Abandoned Vessel*
960 F.2d 665 (7th Cir. 1992) ........................................................................ 1

## Statutes

Fair Credit Reporting Act 15 U.S.C. § 1681 *et seq* ...................................... 4
15 U.S.C. § 1681a(b) ................................................................................... 22

15 U.S.C. § 1681n(a) ............................................................................................ 22
15 U.S.C. § 1681*o*(a) ........................................................................................... 22
25 U.S.C. 1303 ....................................................................................................... 21
25 U.S.C. § 2710(d)(7)(A)(ii) .............................................................................. 21

Rules

Fed. R. Civ. P. 4(k)(1)(A) ....................................................................................... 5
Fed. R. Civ. P. 4(k)(1)(C) ....................................................................................... 5
Fed. R. Civ. P. 12(b)(1) ................................................................................. 1, 4, 12
Fed. R. Civ. P. 12(b)(2) ................................................................................... 1, 4, 5

Constitution

U.S. Const. Art. III, § 2 .......................................................................................... 9

## INTRODUCTION

Pursuant to Rules 12(b)(1) and (2) of the Federal Rules of Civil Procedure, Specially-Appearing Defendant[1] American Web Loan, Inc. ("American Web Loan" or "Defendant"), a wholly-owned and operated economic arm and instrumentality of the Otoe–Missouria Tribe of Indians ("Tribe"), a federally-recognized Indian tribe, hereby respectfully moves to dismiss Plaintiff Yolonda Short's Complaint, with prejudice.  For the reasons set forth below, the motion must be granted as the Court lacks subject matter jurisdiction to preside over the Plaintiff's claims and lacks personal jurisdiction over American Web Loan.

## BACKGROUND

The Tribe is a federally recognized sovereign nation located in rural Oklahoma.  *See* Attachment 2 - Declaration of Ted Grant in Support of Motion to Dismiss ("Grant Decl.") at ¶ 1; *see* Department of the Interior, List of Federally Recognized Tribes, *available at* 81 Federal Register 26826, at 26829 (May 4, 2016).  The Tribe's Constitution assigns lawmaking authority to the Tribal

---

[1] American Web Loan files this Motion for the limited purpose of contesting this tribunal's jurisdiction to preside over the proceedings at hand.  Such limited or special appearance shall not be construed as waiving any arguments that American Web Loan has with regard to their sovereign immunity or this tribunal's lack of jurisdiction. Courts have routinely recognized that a sovereign's limited appearance in legal proceedings for the purpose of seeking dismissal for lack of jurisdiction does not waive any claims to sovereign immunity.  *See e.g., Kansas v. United States*, 249 F.3d 1213, 1220 (10th Cir. 2001); *Zych v. Wrecked and Abandoned Vessel*, 960 F.2d 665, 667-68 (7th Cir. 1992); *Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Norton*, 327 F. Supp. 2d 995, 1000 (W.D. Wis. 2004); *Wyandotte v. Kansas City*, 200 F. Supp. 2d 1279, 1287 (D. Kan. 2002); *Miami Tribe of Okla. v. Walden*, 206 F.R.D. 238 (S.D. Ill. 2001).

Council, and this includes the authority to create new business enterprises for the Tribe.  Grant Decl. at ¶¶ 2–4.  In an exercise of this authority, in June 1988, the Tribal Council enacted the Otoe-Missouria Tribe of Indians Corporation Act ("Corporation Act").  Grant Decl. at ¶ 4.  The Corporation Act enables the Tribe to establish wholly owned tribal enterprises for the purposes of developing the Tribe's economy and improving the health, safety, and welfare of the Tribe's members.  *Id.*  Tribally owned business entities created under the Corporation Act are deemed to be economic arms and instrumentalities of the Tribe, vested with all of the sovereign attributes of the Tribe.  *See* Grant Decl. at ¶¶ 5, 11; *see also* Attachment 2A – Resolution OMTC #210561 and American Web Loan Act.

On February 10, 2010, the Tribe established Defendant American Web Loan, creating the business as a wholly owned tribal entity under the Corporation Act.  Grant Decl. at ¶ 5.  American Web Loan was created with the express purpose of growing the Tribe's economy and to aid in addressing issues of public health, safety, and welfare.  Grant Decl. at ¶ 9; Attachment 2A at p. 1 and § 201.  The Tribe has the sole ownership interest in American Web Loan.  Grant Decl. at ¶ 5.  All profits inure directly to the tribal government, and are used to fund a wide array of government services for the benefit of the Tribe and its members, including housing and education programs.  Grant Decl. at ¶ 9; Attachment 2A at p.1 and § 201.  The Tribe also maintains control over the business operations of

American Web Loan.   Grant Decl. at ¶¶ 7, 8; Attachment 2A at § 203.   The members of the five-person Board of Directors—a majority of whom must be Tribal members—are appointed by the Tribal Council, and may be removed by the Tribal Council should they fail to fulfill their responsibilities.   Grant Decl. at ¶ 8; Attachment 2A at § 203.

American Web Loan is also comprehensively regulated under Tribal law. Grant Decl. at ¶ 12; Attachment 2B – Otoe-Missouria Consumer Finance Regulatory Ordinance.   The business operates pursuant to a license granted by the Otoe–Missouria Consumer Finance Services Regulatory Commission ("Commission").   Grant Decl. at ¶ 13; Attachment 2C – American Web Loan License.   The Commission is an independent tribal regulatory agency charged with enforcing the Tribe's financial services laws, including the Otoe–Missouria Consumer Finance Services Regulatory Commission Ordinance ("Ordinance"). Grant Decl. at ¶ 12; Attachment 2B – Otoe-Missouria Consumer Finance Regulatory Ordinance.   In carrying out this responsibility, the Commission oversees the lending activities of American Web Loan and monitors its compliance with the Ordinance.   Grant Decl. at ¶¶ 12, 13.

Finally, and most relevant for the purposes of this litigation, in establishing American Web Loan, the Tribe conferred on the entity all privileges and immunities enjoyed by the Tribe, including, but not limited to, immunity from suit.

Grant Decl. at ¶¶ 11, 14.  It is undisputed in this case that American Web Loan's immunity has not been waived, implicitly or explicitly, in relation to the instant action by the Tribe, or American Web Loan.  *See* Grant Decl. at ¶ 15.

On April 8, 2016, Plaintiff filed a Complaint against American Web Loan based on alleged violations of the Fair Credit Reporting Act ("FCRA" or "Act"), 15 U.S.C. § 1681 *et seq.*  Plaintiff, who at no point was ever a customer of American Web Loan, alleges that American Web Loan obtained access to her credit information without any permissible purpose for doing so.  *See* Complaint at ¶¶ 13–15.  Without providing any detail whatsoever, she alleges that she "has suffered an unwarranted invasion of her privacy, which may expose her to additional improper uses of her credit report or her personal identification information."  *Id.* at ¶ 20.  Her other allegations of damages are similarly unadorned.  *See id.* at ¶¶ 30, 38 ("Ms. Short has suffered damages as a result of these violations of the FCRA.").

## ARGUMENT

Defendant's Motion to Dismiss must be granted because this Court lacks both personal jurisdiction over Defendant and subject matter jurisdiction over the proceedings.  *See* Fed. R. Civ. P. 12(b)(1), (2).  Personal jurisdiction is lacking because Defendant has no contacts with the State of Michigan.  As to subject matter, this Court lacks jurisdiction for two reasons.  First, Plaintiff has failed to

establish Article III standing because she has suffered no injury-in-fact.  Second,
Defendant is an arm of a federally recognized tribe, and thus has sovereign
immunity against Plaintiff's claims.  For any of these independent reasons, the case
must be dismissed with prejudice.

## I.      The Court lacks personal jurisdiction, as Defendant has no contacts with the State of Michigan.

It is Plaintiff's burden to prove that the Court has personal jurisdiction over
American Web Loan.  *See Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d
883, 887 (6th Cir. 2002).  In this case, recent and indistinguishable precedent of
this Court, *Zellerino v. Roosen*, 118 F. Supp. 3d 946 (E.D. Mich. 2015) , makes it
clear that Plaintiff's allegations are insufficient to meet this burden.  Accordingly,
this case must be dismissed pursuant to Rule 12(b)(2) of the Federal Rules of Civil
Procedure.

Absent a federal statute authorizing nationwide service of process, federal
courts typically refer to state law to determine whether a particular defendant is
subject to the court's personal jurisdiction.  *Med. Mutual of Ohio v. deSoto*, 245
F.3d 561, 567 (6th Cir. 2001); *see* Fed. R. Civ. P. 4(k)(1)(A), (C).  FCRA does not
provide for nationwide service of process.  *See White v. Hillcrest Davidson &
Assocs.*, 952 F. Supp. 2d 80, 82 (D.D.C. 2013) (explaining that FCRA "does not
purport to deal with the question of personal jurisdiction").  As a result, a federal
court adjudicating a FCRA claim will undertake a familiar two-step process: first

the court will look to the law of the forum state to determine whether a statute authorizes the exercise of personal jurisdiction; and, second, if such a statute exists, the court will then determine whether the exercise of personal jurisdiction "comports with the limits imposed by federal due process." *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014) (citation omitted).  In Michigan, the long-arm statute "extends to the limits imposed by the federal constitutional Due Process requirements and thus, the two questions become one." *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 954 F.2d 1174, 1176 (6th Cir. 1992).  Accordingly, the inquiry in this case is limited to a determination of whether the exercise of personal jurisdiction over Defendant complies with the limits of the Due Process Clause.

Due process requires that a defendant have "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  Conceived from these "notions of fair play and substantial justice," there have developed two categories of personal jurisdiction—general and specific. *Daimler*, 134 S. Ct. at 754.  General jurisdiction, i.e., all-purpose jurisdiction, permits a court to preside over suits based on any claims, wherever those claims may arise. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).  It requires that the defendant have contacts with the forum state that are

"so 'continuous and systematic' as to render [the defendant] essentially at home in the forum state." *Id.* (citation omitted).  In this case, because Plaintiff has not alleged that American Web Loan has such "continuous and systematic" ties, e.g., by maintaining its principal place of business in Michigan, she ostensibly relies on specific jurisdiction.[2]

To establish specific jurisdiction, the plaintiff's cause of action must be based on the defendant's activities in the forum state.  In other words, specific jurisdiction is appropriate only when the claim asserted against the defendant arises out of the defendant's contacts with the forum state.  *Id.* at 924.  The inquiry focuses on "the relationship among the defendant, the forum, and the litigation." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984) (citation omitted).

In *Zellerino v. Roosen*, this Court applied the jurisdictional principles outlined above to a set of facts indistinguishable from the present case.  The plaintiff, Janice Zellerino, was a Michigan resident who brought a FCRA claim against two California defendants based on their alleged unauthorized access of her credit report from Experian, a Georgia company.  118 F. Supp. 3d at 948–49.  She

---

[2] Even if the Court were to analyze general jurisdiction, the outcome would be the same.  Defendant was incorporated on tribal land pursuant to tribal law, and its principal place of business is also on tribal land.  Defendant simply has no continuous and systematic ties with the State of Michigan.

made no allegations that the California defendants had any contact with the State of Michigan—only that the harm created by their conduct was felt there. *See id.*

In analyzing the defendants' jurisdictional defense, this Court looked to the Supreme Court's recent decision in *Walden v. Fiore*, 134 S. Ct. 1115 (2014). *Walden* held that the contacts necessary to find personal jurisdiction "must arise out of contacts that the defendant *himself* creates with the forum State," and that the analysis "must look to the defendant's contact with the forum State itself, not the defendant's contacts with persons who reside there." *Zellerino*, 118 F. Supp. 3d at 952 (summarizing *Walden*) (emphasis in original).

Applying *Walden*, this Court expressly held that "the defendants' conduct of accessing the plaintiff's credit report, which presumably took place in California, cannot furnish a basis for them to be sued in a Michigan court, even though the plaintiff felt the impact of that privacy breach in Michigan." *Id.* This was because none of the defendants' conduct "had anything to do with Michigan itself." *Id.* The defendants did not conduct any activities in Michigan; rather, they merely requested a report held by a company based in Georgia (Experian). *Id.*

*Zellerino* cannot be distinguished from the case at hand. Like Ms. Zellerino before her, Plaintiff Yolonda Short, a Michigan resident, has sued an out-of-state entity (American Web Loan) for allegedly accessing her credit report from another out-of-state entity (Clarity). Though her alleged (and speculative) harm—

assuming *arguendo* there was any—may have been felt in Michigan, none of American Web Loan's alleged conduct occurred in Michigan or was aimed at Michigan.   As a result, this Court plainly lacks personal jurisdiction over Defendant, and this case must be dismissed.

## II.     Plaintiff lacks Article III standing.

In addition to lacking personal jurisdiction over Defendant, this Court also lacks subject matter jurisdiction over the proceedings.   The first defect in this Court's subject matter jurisdiction is that Plaintiff lacks standing to bring suit, for she has not alleged any concrete injury whatsoever.

By constitutional design, federal courts do not serve as "courts of general jurisdiction." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). Article III of the Constitution confines their jurisdiction to "cases" and "controversies." Const., Art. III, § 2.  This case-or-controversy requirement means that a plaintiff must have standing to bring suit.   To demonstrate standing, a plaintiff must prove three elements.  The plaintiff must have (1) suffered an injury-in-fact, (2) that is fairly traceable to the challenged actions of the defendant, and (3) that is likely to be redressed by the requested relief. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

To  establish  the  first  element—injury-in-fact—the  plaintiff  must demonstrate that he or she has suffered "an invasion of a legally protected interest

which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.* (internal citations and quotation marks omitted).

Recently, in *Spokeo v. Robins*, 136 S. Ct. 1540 (2016), a FCRA case similar to the one at hand, the Supreme Court held that a plaintiff failed to satisfy the "concrete injury" requirement because he had alleged merely "a bare procedural violation." *Id.* at 1550.  The plaintiff in *Spokeo* had alleged that a "people search engine" disseminated false information about him, including "misinformation about his education, family situation, and economic status." *Id.* at 1556 (Ginsburg, J., dissenting) (summarizing the allegations).  The Court explained that these allegations alone could not suffice to establish a concrete injury.  Rather, for the complaint to allege a concrete injury, the injury "must be 'de facto'; that is, it must actually exist." *Id.* at 1548 (majority opinion).

In this proceeding, Plaintiff's allegations are even shoddier than those made in *Spokeo*.  Essentially, Plaintiff alleges that Defendant accessed her personal information without a permissible purpose, in violation of FCRA.  Even assuming *arguendo*, that the allegations were true, Plaintiff's Complaint would still amount to nothing more than allegations of a "bare procedural violation," like that made in *Spokeo*. *Id.* at 1550.  Such a violation, taken alone, does not equate to an injury in fact. *Id.*  ("A violation of one of the FCRA's procedural requirements may result in no harm.").

In *Spokeo*, the plaintiff at least made some allegations regarding factual matters such as the dissemination of false information regarding his education, family situation, and economic status; but in this case, Plaintiff has done nothing of the sort.  Indeed, Plaintiff's statement that she has suffered an "invasion of her privacy" is conclusory and insufficient to establish a concrete injury.  Complaint at 5, ¶ 20.  Formulaic recital of a legal term of art such as "invasion of privacy," without any explanation of what that "invasion" entailed, is far too speculative to pass muster under Article III.

Indeed, sensitive to the separation-of-powers concerns associated with giving uninjured persons access to the federal courts, the Supreme Court has long refused to confer standing when plaintiffs merely plead unadorned allegations of harm that lack any meaningful description.  So it was in *Lujan*, where the Court refused to find an "injury" when the plaintiffs merely set forth undetailed plans to someday visit a foreign country (where the federal government's policies would allegedly cause environmental damage).  *Lujan*, 504 U.S. at 564 (holding that an injury cannot be established when the plaintiff does not offer any "specification" or "description of concrete plans").  And so it is now, in the wake of *Spokeo*, federal courts have expressly held that bare allegations of FCRA violations resulting in "invasion of privacy" do not suffice for the purposes of Article III standing.  *Smith v. The Ohio State University*, 2016 WL 3182675, at *4 (S.D. Ohio June 8, 2016).

Because Plaintiff has not alleged a concrete injury, she lacks Article III standing. Consequently, the Court lacks subject matter jurisdiction, and this case must be dismissed pursuant to Rule 12(b)(1).

## III. Defendant, as a wholly owned economic instrumentality of an Indian Tribe, retains sovereign immunity against suit, depriving this Court of subject matter jurisdiction.

The second fatal defect in this Court's subject matter jurisdiction is that American Web Loan, as an economic arm and instrumentality of a federally recognized tribe, possesses tribal sovereign immunity against suit – preventing the instant action from proceeding.

### A. American Web Loan, as an arm of a federally recognized tribe, is immune from this suit.

As sovereign governments, federally- recognized tribes possess common-law immunity from suit. *Michigan v. Bay Mills Indian Community*, 134 S. Ct. 2024, 2029 (2014). The doctrine of tribal sovereign immunity has been recognized by the Supreme Court "for well over a century" and has been reaffirmed many times throughout that period. *Id.* at 2040 (Sotomayor, J., concurring); *see also Kiowa Tribe of Okla. v. Mfg. Techs., Inc.*, 523 U.S. 751 (1998); *Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe*, 498 U.S. 505 (1991); *Puyallup Tribe v. Dep't of Game of Washington*, 433 U.S. 165 (1977); *United States v. U.S. Fidelity & Guaranty Co.*, 309 U.S. 506 (1940); *Parks v. Ross*, 11 How. 362 (1851). Tribal

sovereign immunity is, by now, "firmly ensconced in our law." *Allen v. Gold Country Casino*, 464 F.3d 1044, 1046 (9th Cir. 2006).

Indeed, immunity is among of the "core aspects" of tribal sovereignty. *Bay Mills*, 134 S. Ct. at 2030. It is subject to diminution only at the hands of Congress, which has "plenary authority" over Indian affairs. *Id.* at 2031–32. Thus, absent an unequivocally clear waiver, e.g., through a contractual agreement, only Congress can authorize a suit against a nonconsenting tribe. *Bay Mills,* 134 S. Ct. at 2037.

Though susceptible to nullification by Congress, barring such drastic legislative action, tribal sovereign immunity remains far-reaching. It applies to both "governmental" activities as well as "commercial" activities, regardless of whether the activity in question took place on- or off-reservation. *Kiowa*, 523 U.S. at 760. Immunity also extends to a tribe's political and economic subdivisions, including its wholly owned business entities, which are treated under the law as "arms of the Tribe." *Cook v. AVI Casino Enters., Inc.*, 548 F.3d 718, 725-26 (9th Cir. 2008) (explaining that "tribal corporations acting as an arm of the tribe enjoy the same sovereign immunity granted to a tribe itself").

In determining whether a tribal entity is an arm of the tribe, courts consider several factors, including: (1) the method of creation of the entity; (2) the purpose of the entity; (3) the entity's structure, ownership, and management, including the Tribe's control over the entity; (4) whether the Tribe intended for the entity to have

sovereign immunity; (5) the financial relationship between the Tribe and the entity; and (6) whether the purposes of tribal sovereign immunity are served by granting sovereign immunity to the entity.  *Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1187 (10th Cir. 2010).

American Web Loan easily meets the arm-of-the-tribe test.  In fact, the analysis closely tracks that of the most recent arm-of-the-tribe case involving tribal lending, *Everette v. Mitchem*, 146 F. Supp. 3d 720 (D. Md. 2015), where the District Court for the District of Maryland held that two tribal online lending entities were arms of their respective tribes, applying the exact framework set forth in *Breakthrough*.

The first factor—method of creation—weighs in favor of finding that American Web Loan is an arm of the Tribe, as the business was created under tribal law, established pursuant to the Corporation Act and Tribal Council Resolution OMTC #210561.  Grant Decl. at ¶¶ 4, 5; *see Everette*, 146 F. Supp. 3d at 724 (applying the first *Breakthrough* factor).

The second factor—the entity's purpose—weighs in favor of finding that American Web Loan is an arm of the Tribe, as the entity was specifically designed to promote tribal economic development and to aid in addressing issues of public health, safety, and welfare.  Grant Decl. at ¶ 9.  The Tribe created American Web Loan with the purpose of enhancing the Tribe's economy, providing employment

14

opportunities, and generating revenue for the benefit of the Tribe and its members. *Id.* These revenues are used to fund important government services, including housing and educational programs. *Id.*; *see Everette*, 146 F. Supp. 3d at 724 (applying the second *Breakthrough* factor).

The third factor—structure, ownership, and management—weighs in favor of finding that American Web Loan is an arm of the Tribe, as the business is wholly owned and controlled by the tribal government. Grant Decl. at ¶¶ 5–8. The Chief Executive Officer is a member of the Tribe (and the Tribe's Vice-Chairman). Grant Decl. at ¶¶ 1, 6. The Board of Directors, which oversees and manages Defendant's business affairs, is comprised of individuals appointed by the Tribal Council, and at least a majority of the Board must at all times consist of enrolled tribal members. Grant Decl. at ¶ 7. These Board members may be removed by the Tribal Council at any time should they fail to fulfill their obligations. Grant Decl. at ¶ 8. Further, in addition to control over day-to-day operations through the Board of Directors, the Tribe exercises independent *regulatory* control over American Web Loan, as American Web Loan is subject to the comprehensive oversight of the Commission, the Tribe's independent regulatory agency. Grant Decl. at ¶¶ 12–13; *see Everette*, 146 F. Supp. 3d at 724–25 (applying the third *Breakthrough* factor).

The fourth factor—the Tribe's intent—weighs in favor of finding that American Web Loan is an arm of the Tribe because the Tribe plainly intended to extend its sovereign immunity to American Web Loan.  Grant Decl. at ¶ 11.  Indeed, the American Web Loan Act plainly acknowledges the Tribe's intent to extend its immunity to American Web Loan and clarifies that nothing in the Tribe's laws shall be construed as waiving that immunity.  *Id.*, Exh. A, § 401; *see Everette*, 146 F. Supp. 3d at 725 (applying the fourth *Breakthrough* factor).

The fifth factor—the financial relationship between the Tribe and the entity—weighs in favor of finding that American Web Loan is an arm of the Tribe because all of the profits from the business inure to the benefit of the Tribe.  Grant Decl. at ¶ 9.  Again, the revenues support important governmental services such as education and housing programs.  *Id.*; *see Everette*, 146 F. Supp. 3d at 725 (applying the fifth *Breakthrough* factor).

Finally, the sixth factor—the purposes of sovereign immunity—also weighs in favor of finding that American Web Loan is an arm of the Tribe.  Defendant is the source of a significant portion of the Tribe's operating budget.  Grant Decl. at ¶ 9.  As stated above, the funds that the Tribe receives through American Web Loan are used to support important governmental services.  This makes American Web Loan a key component of the Tribe's economic development efforts.  If the revenues earned by American Web Loan were subject to levy and attachment, the

Tribe's treasury would be directly and negatively impacted.   Courts have long recognized that "protect[ing] the sovereign Tribe's treasury . . . is one of the historic purposes of sovereign immunity in general."   *Allen v. Gold Country Casino*. 464 F.3d 1044, 1047 (9th Cir. 2006).   Accordingly, extending tribal sovereign immunity to Defendant would serve the purposes of immunity doctrine. *See Everette*, 146 F. Supp. 3d at 725 (applying the sixth *Breakthrough* factor).

Indeed, numerous federal courts across the country have repeatedly held that tribal business entities providing services over the Internet have satisfied the arm-of-the-tribe standard.   *See, e.g., id.* (holding that two tribal lending entities were arms of their respective tribes); *Bynon v. Mansfield*, 2015 WL 2447159 (E.D. Pa. May 21, 2015) (holding that the manager of a tribal lending entity was immune from suit, as the entity was an arm of the tribe).   The state courts of both California and Colorado have taken a similar approach, as both have held that tribal lending entities possessed sovereign immunity, precluding state administrative subpoenas and enforcement proceedings, because the entities qualified as arms of their respective tribes.   *See People v. Miami Nation Enterprises*, 166 Cal. Rptr. 3d 800, 817 (Cal. Ct. App. 2014); *see also Cash Advance v. State*, 242 P.3d 1099, 1111 (Colo. 2010), *remanded to Colorado v. Cash Advance*, No. 05CVI143, 2012 WL 3113527 (Colo. Dist. Ct. Feb. 13, 2012) (finding on remand that the tribal lending entity was an arm of the tribe). The Colorado court reasoned that the tribal lending

entities were created pursuant to tribal law; they were owned and operated by their tribes; and conferring immunity upon the tribal lending entities protected the tribal treasury.  *Colorado v. Cash Advance*, 2012 WL 3113527 at *13–16.  Likewise, the Court of Appeal of California stated it thusly:

> Absent an extraordinary set of circumstances . . . a tribal entity functions as an arm of the tribe if it has been formed by tribal resolution and according to tribal law, for the stated purpose of tribal economic development and with the clearly expressed intent by the sovereign tribe to convey its immunity to that entity, and has a governing structure both appointed by and ultimately overseen by the tribe. Such a tribal entity is immune from suit absent express waiver or congressional authorization.

*Miami Nation Enterprises*, 166 Cal. Rptr. 3d at 817.

Similarly, in February of this year, the District Court for the Northern District of Oklahoma quashed a subpoena issued to a business entity named Great Plains Lending, LLC, which is also a tribal lending entity owned and operated by the Otoe-Missouria Tribe.  *See Dillon v. BMO Harris Bank, N.A.*, 2016 WL 447502 (N.D. Okla. Feb. 4, 2016).  In so doing, the court explained that Great Plains "serves as an economic arm of the Tribe" and is thus protected by tribal sovereign immunity.  *Id.* at *1.

In fact, not a single court has fallen out of rank; every court to have considered this issue has held that tribal lending entities that are created under tribal law and that are owned and controlled by a tribe for the purposes of tribal economic development qualify as arms of the tribe, and are thus protected by tribal

sovereign immunity.  Because Defendant plainly qualifies as an arm of the Tribe, it retains immunity from suit, thus divesting this Court of jurisdiction to preside over the instant action.

### B. The FCRA does not abrogate tribal sovereign immunity.

Here, because neither the Tribe nor American Web Loan has waived its sovereign immunity to establish subject matter jurisdiction, Plaintiff must show that Congress expressly abrogated tribal sovereign immunity from suit under the FCRA.  *Kiowa*, 523 U.S. at 754 ("As a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity.").  Plaintiff is clearly unable to do so, as nothing in the FCRA indicates congressional intent to abrogate tribal sovereign immunity.

At the outset, it is important to acknowledge a critical distinction—that a federal statute's applicability to a tribe is not dispositive of the issue of whether the statute abrogates the tribe's sovereign immunity and thus authorizes private enforcement actions against the tribe.  In other words, as the Eleventh Circuit Court of Appeals explained, "a statute can apply to an entity without authorizing private enforcement actions against that entity."  *Fla. Paraplegic Ass'n, Inc. v. Miccosukee Tribe*, 166 F.3d 1126, 1128 (11th Cir. 1999) (finding that the Americans with Disabilities Act applies to tribes, but does not abrogate tribal immunity from suit).  Thus, it is not necessary for this Court to determine whether

the FCRA's substantive provisions apply to tribes and their instrumentalities; rather, for the purposes of a motion to dismiss for lack of subject matter jurisdiction, the Court need only determine whether the FCRA unequivocally strips tribes and their instrumentalities of sovereign immunity from suit.

Congress must make its intention to abrogate tribal sovereign immunity unmistakably clear. *Bay Mills*, 134 S. Ct. at 2032 ("[C]ourts will not lightly assume that Congress in fact intends to undermine Indian self-government"); *C&L Enters., Inc. v. Citizen Band Potawatomi Tribe of Okla.*, 532 U.S. 411, 418 (2001) ("To abrogate tribal immunity, Congress must 'unequivocally' express that purpose.") (citation omitted).  When an ambiguity exists as to whether or not tribal sovereign immunity has been abrogated, any ambiguity should be "construed liberally in favor of the Indians [and] interpreted to their benefit." *Montana v. Blackfeet Tribe of Indians*, 471 U.S. 759, 766 (1985).  Indeed, "[t]he baseline position . . . is tribal immunity." *Bay Mills*, 134 S. Ct. at 2031.  Thus, Plaintiff must show that the FCRA unequivocally abrogates tribal sovereign immunity, and any ambiguities within the FCRA as to whether such abrogation exists should be construed in favor of upholding the Tribe's (and American Web Loan's) sovereign immunity.  Plaintiff cannot make this showing because there is no evidence to suggest that Congress intended to so abrogate tribal sovereign immunity through the FCRA.

The Supreme Court has recognized that when Congress intends to abrogate tribal sovereign immunity, it does so explicitly.  In the first case in which the Supreme Court tackled the issue of whether Congress statutorily abrogated tribal sovereign immunity, *Santa Clara Pueblo v. Martinez*, 436 U.S. 49 (1978), the Court examined the Indian Civil Rights Act ("ICRA").  Reasoning that "[n]othing on the face of Title I of the ICRA purports to subject tribes to the jurisdiction of the federal courts," the Court held that ICRA did not abrogate tribal sovereign immunity for alleged civil rights violations.[3]   *Id.* at 59.  Consequently, the Court stated that "suits against the tribe under the ICRA are barred by its sovereign immunity." *Id.*

More recently, in *Bay Mills*, the Supreme Court acknowledged that the Indian Gaming Regulatory Act ("IGRA") abrogates tribal sovereign immunity, but only for a very specific cause of action—claims by a State to enjoin gaming "on Indian land" alleged to be in violation of a Tribal–State Compact.  *See* 25 U.S.C. § 2710(d)(7)(A)(ii).  Thus, when the State of Michigan attempted to sue a tribe for allegedly unlawful gaming taking place *off* Indian lands, the Court held that IGRA

---

[3] A separate provision of ICRA does authorize suits against Indian tribes, but only in the context of habeas corpus proceedings.  *See* 25 U.S.C. § 1303.  That provision was not at issue in *Santa Clara*, and is certainly not the issue before this Court.

did not authorize the suit, and it was therefore barred by sovereign immunity. *Bay Mills*, 134 S. Ct. at 2039.

Federal courts throughout the country, examining a wide array of federal statutes, have refused to find a congressional abrogation of tribal sovereign immunity without a clear expression of that intent. *See, e.g.*, *Chayoon v. Chao*, 355 F.3d 141, 143 (2d Cir. 2004) (holding that the Federal Medical Leave Act does not abrogate tribal sovereign immunity); *Bassett v. Mashantucket Pequot Tribe*, 204 F.3d 343 (2d Cir. 2000) (Copyright Act); *Fla. Paraplegic Ass'n*, 1661 F.3d 1126 (11th Cir. 1999) (Americans with Disabilities Act); *Larimer v. Konocti Vist Casino Resort, Marina & RV Park*, 814 F. Supp. 2d 952 (N.D. Cal. 2011) (Fair Labor Standards Act); *Freemanville Water System, Inc. v. Poarch Band of Creek Indians*, 2008 WL 80644 (S.D. Ala. 2008) (Consolidated Farm and Rural Development Act).

The FCRA subjects any "person" who willfully or negligently fails to adhere to its restrictions to liability for damages.  15 U.S.C. §§ 1681n(a), 1681*o*(a).  The Act defines "person" as "any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity." § 1681a(b).  Nowhere does this definition—or any other provision of FCRA—make any reference to Indian tribes.  Given the lack of specificity on this score, it is impossible to say that Congress "unequivocally" abrogated tribal

sovereign immunity, and therefore FCRA cannot be held to waive tribal sovereign immunity.

In fact, the Seventh Circuit Court of Appeals recently decided this exact issue, in the case of *Meyers v. Oneida Tribe of Indians of Wisconsin*, No. 15-3127 (7th Cir. Sept. 8, 2016). In that case, the plaintiff, Jeremy Meyers, made purchases using his credit card at two stores owned by the Oneida Tribe. At each store, he received a receipt that included more than the last five digits of his credit card as well as the card's expiration date. This, he alleged, was a violation of FCRA. The Seventh Circuit rejected his claim, holding that the case was barred by tribal sovereign immunity.

The court essentially reasoned that nothing in FCRA indicates an unequivocal congressional intent to abrogate tribal sovereign immunity. The court pointed out: "Congress has demonstrated that it knows full well how to abrogate tribal sovereign immunity." Slip Op. at 11. It has done so in statutes such as the Safe Water Drinking Act, which expressly refers to Indian tribes. *See id.* But the FCRA contains no express provision referencing Indian tribes. The term "any government," the court reasoned, is simply too imprecise to indicate with perfect clarity that Congress intended to abrogate tribal sovereign immunity. *Id.* at 13. Accordingly, and in light of the fact that all ambiguity must be resolved in favor of

the tribes, the court held that FCRA did not abrogate tribal sovereign immunity. *Id.* at 17.

As stated above, this Court may dismiss this case on numerous grounds. However, if the Court reaches the sovereign immunity issue first, it should follow the precedent set by the Seventh Circuit, as that court appropriately found that without an express reference to Indian tribes or tribal sovereign immunity, one cannot reasonably find that Congress intended to abrogate tribal sovereign immunity under the FCRA. *See In re Greektown Holdings, LLC*, 532 B.R. 680, 698–99 (E.D. Mich. 2015) ("There is not a single example of a Supreme Court decision finding that Congress intended to abrogate the sovereign immunity of the Indian tribes without specifically using the words 'Indians' or 'Indian tribes.'").

Thus, because the record proves that American Web Loan is an arm of the Tribe, and its immunity has not been waived by the Tribe or abrogated by FCRA, Defendant is immune from these proceedings, thereby depriving this Court of subject matter jurisdiction.

## CONCLUSION

For the reasons stated above, Defendant respectfully requests that the Court dismiss Plaintiff's Complaint, with prejudice, pursuant to Rules 12(b)(1) and 12(b)(2) of the Federal Rules of Civil Procedure.

RESPECTFULLY SUBMITTED this 12th day of September, 2016.

By:     /s/ Karrie S.Wichtman
           Karrie S. Wichtman (P73817)
           Rosette, LLP
           Attorney for American Web
           Loan, Inc.
           25344 Red Arrow Hwy.
           Mattawan, MI  49071
           269.283.5005 (Office)
           517.913.6443 (Fax)
           kwichtman@rosettelaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 12, 2016, I electronically filed the

foregoing paper with the Clerk of the Court using the CM/ECF system, which will

send notification of such filing to all counsel of record in this matter.

By:   /s/ Karrie S. Wichtman
Karrie S. Wichtman (P73817)
Rosette, LLP
Attorney for American Web Loan, Inc.
25344 Red Arrow Hwy., Ste. B
Mattawan, MI  49071
269.283.5005 (Office)
517.913.6443 (Fax)
kwichtman@rosettelaw.com
Attorney for Specially-Appearing Defendant,
American Web Loan, Inc.